**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENCYCLOPAEDIA IRANICA FOUNDATION, INC., | |
| *Plaintiff,* | CIVIL ACTION NO. _____ |
| v. | |
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, ELTON DANIEL AND BRILL USA, INC., | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT

Plaintiff Encyclopaedia Iranica Foundation, Inc. ("Plaintiff" or "Foundation"), by its undersigned counsel, brings this action against Defendants The Trustees of Columbia University in the City of New York ("Columbia") and Elton Daniel ("Daniel") (collectively, the "Columbia Defendants") and Brill USA, Inc. ("Brill") (collectively, with the Columbia Defendants, referred to herein as "Defendants") and respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, trademark counterfeiting, trademark dilution, conversion, unjust enrichment, and other acts of unfair competition under the Lanham Act, 15 U.S.C. § 1501 *et seq*., and the New York Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349, or common law, tortious interference with contract and prospective economic advantage, as well as other claims under the laws of the State of New York and common law.

## THE PARTIES

2.      Plaintiff is a not-for-profit corporation organized and existing under the laws of the State of New York with its principal place of business at 2472 Broadway, Suite 237, New York, New York 10025.

3.      Defendant Columbia is a not-for-profit educational corporation with a place of business at 450 Riverside Drive, Suite 4, New York, NY 10027.

4.      Defendant Daniel is an individual, who is on information and belief an employee of Columbia, with an office at 450 Riverside Drive, Suite 4, New York, NY 10027. Upon information and belief, Daniel also has a residence at 114 Timberlane Drive, Littleton, North Carolina 27850-8072.

5.      Defendant Brill is a domestic for-profit corporation with an office located at 2 Liberty Square, 11th Floor, Boston, Massachusetts 02109.

## JURISDICTION AND VENUE

6.      This is an action for unfair competition arising under the trademark laws of the United States (Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*); for unfair and deceptive trade practices under the New York Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349; and for trademark infringement and trademark dilution under N.Y. Gen. Bus. Law §§ 350-k and 350-l, unfair competition, tortious interference with contract and prospective economic advantage; and unfair competition, unjust enrichment and conversion under New York common law.

7.      This Court has jurisdiction under Section 39 of the Trademark Act of 1946, 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1331, 1338 and 1367, and the doctrine of supplemental jurisdiction over the New York State and common law claims because they are so related to the

federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.      This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are doing business and/or incorporated in the State of New York and Defendants' wrongful acts occurred within or were directed toward the State of New York and have caused injury to the Foundation within this judicial district. Among other things, Defendants have committed and continue to commit acts of trademark infringement and other tortious acts causing harm in this district and elsewhere in New York by using spurious trademarks and false designations of origin that infringe the Foundation's trademarks.

9.      Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events or acts giving rise to the claims occurred in this district, a substantial part of the property that is the subject of this action is situated in this district, and the Foundation resides in this district.

## FACTUAL BACKGROUND

### The History of the Foundation and the Publication of the Encyclopaedia Iranica

10.     Professor Ehsan Yarshater ("Yarshater"), was an Iranian historian and a distinguished scholar of Persian language and literature.

11.     In 1958, he became a visiting professor of Indo-Iranian languages and religions at Columbia University. Three years later he was named Columbia's first chairman of Iranian Studies.

12.     In 1969, he founded the Center for Iranian Studies and served as its Director until his retirement in 2016.

13.     Yarshater was a successful fundraiser for this Center that he created. He used such funds to create, publish and distribute several publications at the Center as well as to hire staffing for such publications.

14.     In 1973, Yarshater founded the Encyclopædia Iranica ("Encyclopædia") and remained its Editor-in-Chief until shortly before his death at the age of 98 in 2018.

15.     The Encyclopædia is dedicated to the study of Iranian civilization in the Middle East, the Caucasus, Central Asia, and the Indian Subcontinent.  This work covers all aspects of Iranian history and culture, as well as all Iranian languages and literatures, facilitating the entire range of Iranian studies research from archeology to political science.

16.     The Encyclopædia benefits not only those who are interested in Persian life and culture but also students, specialists, and the educated general reader interested in a variety of academic disciplines. The disciplines represented include, but are not confined to: anthropology, archaeology, geography, art history, ethnology, sociology, economics, history of religion, philosophy, mysticism, history of science and medicine, Islamic history, botany, zoology, folklore, the development of agriculture and industry, political science, international relations, and diplomatic history.

17.     In 1990, Yarshater established the Foundation to carry out research on all aspects of Iranian and related studies and to promote the cause of the Encyclopædia, through the establishment of an endowment fund and the publishing, dissemination, and distribution of the results of its work.

18.     As Editor-in-Chief of the work, Yarshater owned the copyright in the Encyclopædia and he assigned all of his rights to the Foundation.

19.     At the direction of Yarshater, the copyrights in each volume of the Encyclopædia has been registered in the name of the Foundation since 2003.

20.     The mission of the Foundation is to ensure the uninterrupted and permanent continuation of the Encyclopædia as a significant work of reference, archival resource, and databank covering all aspects of Iranian civilization in its widest temporal and spatial context.

21.     For at least four decades, Yarshater and others working on behalf of the Foundation, conducted research, fundraising efforts, and scholarly work dedicated to the study of Iranian civilization in the Middle East, the Caucasus, Central Asia and the Indian Subcontinent.

22.     Yarshater was the President of the Foundation until his death in 2018.

23.     In 1999, Yarshater and his late wife, Latifeh Alvieh, sold through Christie's at auction their collection of Iranian and Islamic art, and their collection of travel books and first editions of English and American literature, and donated the proceeds ($1,400,000.00) to the Foundation.  Yarshater also donated to the Foundation his extensive personal library of some 6,000 volumes and some 2,500 off-prints, which forms the Encyclopædia Iranica Library, and the Foundation continues to add new books to the collection. Upon information and belief, the couple bequeathed in their joint will their estate to the Foundation. *See* **Exhibit A**, 2008 Foundation Annual Report at p. 8.

24.     The Foundation has also received more than 100 paintings donated by Iranian artists over the past several years.

25.     The Foundation has stored for many years its large library of books, artwork and other of its documents relating to Persian language and culture at the Center, and such books, documents and artwork are believed to still be located at the Center.

26.     This collection of works that was donated to the Foundation has been misappropriated by Columbia and despite repeated demands by the Foundation, Columbia has refused to return it.

27.     Defendant Columbia has illegally and impermissibly retained artwork, books and records (including the Encyclopædia Iranica Library referenced above in Paragraph 23), belonging to the Foundation. *See* **Exhibit A** - 2008 Foundation Annual Report at p. 9.

28.     The Foundation was formed in 1999, and as indicated in its Certificate of Incorporation, its primary purposes include:

> To conduct and carry out research on all aspects of Iranian and related studies, either alone or with other organizations. To promote the cause of the Encyclopædia Iranica and the continuation thereof. . .To publish, disseminate and distribute, and help others to publish, disseminate and distribute the results of such research.

*See* **Exhibit B** - *Certificate of Incorporation of the Encyclopædia Iranica Foundation, Inc.*

29.     The Foundation always intended to retain absolute ownership of its intellectual property rights in the Encyclopaedia as evidenced by the Foundation's bylaws:

> The **absolute and unqualified ownership of all aspects of the intellectual property of the *Encyclopædia Iranica*,** including copyright, trademark, reproduction rights electronically or mechanically of the *Encyclopaedia Iranica*, shall be vested in the Foundation.

*Bylaws of the Encyclopædia Iranica Foundation, Inc. § 1.1(c)* (emphasis added).

## The Foundation's Trademarks

30.     The Foundation has applied for and has received approval from the United States Patent and Trademark Office for the registration of the marks ENCYCLOPÆDIA IRANICA and ENCYCLOPÆDIA IRANICA FOUNDATION.  *See* **Exhibit C** - USPTO filings.

31.     The Foundation has registered the ENCYCLOPÆDIA IRANICA and ENCYCLOPÆDIA IRANICA FOUNDATION marks with the New York State Department of

State effective July 2, 2019, as Reg. Nos. R33430, S24728, S24729, S24730, S24731 and S24732, (collectively the New York State Registrations). *See* **Exhibit D** - New York State Registrations.

32.    The New York State Registrations, collectively with the marks shown in the USPTO applications, and the distinctive fleur-de-lis design mark, are referred to herein as the "Iranica Marks."

33.    The Foundation has registered various fascicles and volumes of the Encyclopædia with the United States Copyright Office. **Exhibit E -** List of Copyright Registrations.

34.    The Foundation's "ENCYCLOPÆDIA IRANICA" word mark and its distinctive fleur-de-lis design mark have been displayed on each of the fascicles and volumes of the Encyclopædia (the "Encyclopædia series").  See below.



35.    One or more of the Iranica Marks have been prominently displayed on each publication within the Encyclopædia series.

36.    The Foundation's printed and electronic materials produced in connection with its publication of the printed and online version of the Encyclopædia constitute original works of

authorship. The United States Copyright Office has recognized that these creative works are entitled to protection under the Copyright Act, 17 U.S.C. § 101 *et seq.* by issuing registrations to the Foundation.

37.     At all relevant times, the Foundation was and is the sole and exclusive owner of all right, title, and interest in and to the copyrights for the Foundation's creative works.

38.     The Foundation has invested significant time and resources in developing and obtaining intellectual property related to its products, including, but not limited to, trademark and copyright registrations.

### Defendants Knowingly Planned Unauthorized Use of One or More of the Iranica Marks

39.     In or around January 2017, Defendant Daniel became the interim Director of the Center for Iranian Studies at Columbia University ("Center").

40.     On December 12, 2017, Defendant Daniel communicated to the Foundation's Board of Directors that he was in negotiations with Brill, an international scholarly publisher, for a proposed publishing contract that would include the Encyclopædia series. *See* **Exhibit F -** 12/17/18 Daniel email to Foundation Board Members.

41.     However, the Foundation neither authorized nor was involved with these purported negotiations, had not been provided with the names of the individuals at Brill responsible for these proposed negotiations between Brill and Daniel, and had not authorized Daniel to negotiate on its behalf with Brill.

42.     In February of 2018, the Foundation notified Brill that discussions and negotiations with regard to the publishing rights for the Encyclopædia needed to be conducted with Foundation representatives. *See* **Exhibit G** - 2/23/18 Foundation letter to Brill.

43.     Upon information and belief, Defendant Columbia was aware, in or around February 2018, that Defendant Daniel was conducting unauthorized negotiations with Brill regarding a publishing contract that would involve the use of the Iranica Marks.

44.     Upon information and belief, Defendant Columbia knew, or should have known, that publication by Brill of any fascicle or volume from the Encyclopædia series involved the unauthorized use of counterfeit imitations of the Iranica Marks.

45.     Upon information and belief, in or around February 2018, Defendant Daniel knowingly caused Columbia or the Center to enter into a contract with Brill for the publication of unauthorized Encyclopædia Iranica Volume XVI, Fascicle 4 ("Unauthorized Fascicle 4").

46.     Defendant Columbia knew, or should have known, that Defendant Daniel caused an agreement to be entered into with Brill for the publication of Unauthorized Fascicle 4.

47.     In or around October 2018, Brill published Unauthorized Fascicle 4, containing unauthorized reproductions of the Iranica Marks, listing Defendant Daniel as an unauthorized Editor-in-Chief.



48.     Defendant Daniel continues, without authorization, to represent himself as the Editor-in-Chief of the Encyclopædia on his Columbia faculty webpage. *See* **Exhibit H** - Daniel Columbia webpage.[1]

49.     At no time did Defendants seek, or otherwise obtain, authorization to use the Iranica Marks before the publication of Unauthorized Fascicle 4.

### Brill Engaged in Unfair Competition and Infringed the Iranica Marks Through the Unauthorized Sale of Unauthorized Fascicle 4

50.     On or about June 3, 2019, Brill sold a copy of Unauthorized Fascicle 4 to Marksmen Brand Protection Services, an agent for the Foundation.

51.     Unauthorized Fascicle 4 contains the unauthorized copies of the Iranica Marks.

52.     At no time did Brill seek, or otherwise obtain, authorization from the Foundation to use the Iranica Marks that are prominently displayed on Unauthorized Fascicle 4.

---

[1] This webpage was last accessed on September 13, 2019.

53.     Brill's sale of Unauthorized Fascicle 4 is likely to cause confusion, mistake and deception among prospective customers.

54.     Columbia, Daniel and Brill had actual knowledge of the Foundation's ownership of the Iranica trademarks and they jointly, deliberately and maliciously conspired to engage in the infringing use of these marks with a willful intent to trade on the Foundation's goodwill and to cause confusion, mistake and deception among prospective customers.

### The Columbia Defendants Interfered With the Foundation's Agreements With Encyclopædia Authors

55.     Prior to the publication of Unauthorized Fascicle 4, authors slated to have their scholarly works published in the Encyclopædia ("Authors") entered into an agreement to release and/or assign certain rights in these works to, and for the benefit of, the Foundation ("Foundation Release").

56.     The Foundation Release was a standard form to the benefit of the Foundation.

57.     The Columbia Defendants had actual knowledge of the existence of the Foundation Release.

58.     Upon information and belief, the Columbia Defendants created a new release form that required Authors to release or assign their rights in their scholarly writings to Columbia prior to the publication of Unauthorized Fascicle 4 ("Columbia Release").

59.     The Columbia Defendants' malicious or otherwise improper conduct was intended to interfere with the agreement entered into between the Foundation and the Authors with a deliberate intent to interfere with, and replace, the Foundation Release.

60.     The Columbia Defendants' interference with certain Foundation Releases caused damage to the Foundation.

61.     Upon information and belief, the Columbia Defendants' insistence that Authors sign the Columbia Release in order to have their scholarly works published in the Encyclopædia has irreparably damaged the relationship between the Foundation and Authors.

62.     Upon information and belief, the Columbia Defendants have also contacted Authors whose works were published in previous Encyclopædia fascicles or volumes in an attempt to have the Authors sign a Columbia Release to replace or supersede the Foundation Release.

### The Columbia Defendants Interfered With the Foundation's Agreement Regarding the Encyclopaedia Iranica Website

63.     In or around September 2009, the Foundation contracted with Electric Pulp ("Pulp") for the development and maintenance of the Encyclopædia Iranica website ("Pulp Agreement") accessible at "www.iranicaonline.org" (the "Iranica Website").

64.     The Foundation has paid the annual fees for Pulp to maintain the Iranica Website since the inception of the Pulp Agreement. *See* **Exhibit I** - Pulp Invoices and Payment Receipts.

65.     The Pulp Agreement contains a non-disclosure clause prohibiting either party from disclosing "any Confidential Information to any person(s) whatsoever, except with the prior written consent of the other party or as required by law."

66.     Upon information and belief, the Columbia Defendants had actual knowledge of the Pulp Agreement.

67.     Upon information and belief, the Columbia Defendants deliberately caused Pulp to breach the Pulp Agreement by divulging confidential information to the Columbia Defendants, thereby granting the Columbia Defendants administrator-level access to the Iranica Website.

68.     Pulp did not obtain permission from the Foundation prior to divulging this confidential information to the Columbia Defendants.

69.     The Columbia Defendants' malicious or otherwise improper conduct intentionally interfered with, and caused Pulp to breach, the Pulp Agreement.

70.     The Columbia Defendants' malicious or otherwise improper conduct caused damage to the Foundation.

71.     The Columbia Defendants' malicious or otherwise improper conduct caused damage to the relationship between the Foundation and Pulp.

**The Columbia Defendants Caused Clarivate to Breach Its Agreement With the Foundation Regarding Content Related to the Encyclopædia Iranica Website**

72.     On or around June 2017, the Foundation entered into a contract with Clarivate Analytics ("Clarivate") for the ScholarOne Manuscripts Standard Configuration Conventional Subscription ("ScholarOne Contract").

73.     The ScholarOne Contract related to Clarivate hosting articles and other works included in either the Encyclopædia or related fascicles. ("ScholarOne Database")

74.     Upon information and belief, the ScholarOne Contract was signed by Defendant Daniel.

75.     Daniel was a member of the Board of Directors of the Foundation and was acting on behalf of the Foundation when he signed the ScholarOne Contract.

76.     Subsequent to the signing of the ScholarOne Contract, the ScholarOne invoices were billed to the Foundation and identified the Foundation as the account holder. *See e.g.*, **Exhibit J** - ScholarOne Invoice.

77.     The ScholarOne Contract required Clarivate and the Foundation to ensure the contents of the ScholarOne Database were "secure and inaccessible to unauthorized persons."

78.     The ScholarOne Contract also provided that access to the ScholarOne Database "[would] be directed by [the Foundation] and that Clarivate would not disclose the contents of the ScholarOne Database 'except to support hosted software' or required by law."

79.     Upon information and belief, the Columbia Defendants had actual knowledge of the existence of the Foundation's ScholarOne Contract.

80.     The Columbia Defendants intentionally induced Clarivate to breach the ScholarOne Contract by contacting Clarivate, improperly instructing Clarivate to not transfer any files to the Foundation, and falsely claiming that the data contained in the ScholarOne Database is owned by Columbia.

81.     Clarivate did in fact breach the ScholarOne Contract when it refused to release to the Foundation files contained within the ScholarOne Database.

82.     Specifically, Clarivate sought to impermissibly terminate the ScholarOne Contract when it informed the Foundation that the Foundation was purportedly "no longer a ScholarOne subscriber and was not authorized to receive [data from the ScholarOne Database]." *See* **Exhibit K -** Apr. 10, 2019 Kitty Kong email to Ramine Rouhani.

83.     The suspension of the Foundation's access to the ScholarOne Database was an improper attempt to terminate the Foundation's access to the ScholarOne Database and was in violation of the terms of the Foundation's ScholarOne Contract.

84.     But for the Columbia Defendants' actions, Clarivate would not have breached the Foundation's ScholarOne Contract.

85.     The Foundation was damaged by Clarivate's impermissible suspension of access to documents and information contained within the ScholarOne Database and was a violation of the terms of the Foundation's ScholarOne Contract.

**Defendant Columbia Has Illegally Retained The Foundation's Property**

86.     In 1999, Yarsheter and his late wife, Latifeh Alvieh, sold through Christie's at auction their collection of Iranian and Islamic art, and their collection of travel books and first editions of English and American literature and donated the proceeds ($1,400,000.00) to the Foundation. *See* **Exhibit A**, 2008 Foundation Annual Report at p. 8.

87.     The Foundation has also received more than 100 paintings donated by Iranian artists over the past several years.

88.     On or about April 1, 2019, counsel for the Foundation sent a letter to Columbia terminating its relationship with Columbia and the Yarshater Center and requesting "immediate access to its records, documents, and assets (books, artwork, etc.) from the [Center] so that such property can be catalogued and removed from Columbia premises, no later than April 15, 2019." *See* **Exhibit L** - April 1, 2019 Letter.

89.     Counsel for the Foundation attached a partial list detailing some of the Foundation's property housed at Columbia ("Foundation Property List"). *Id.*

90.     The Foundation is the rightful owner of the property identified in the Foundation Property List.

91.     Defendant Columbia refused the Foundation access to its records, documents, and assets and has failed to return to the Foundation any of the items on the Foundation Property List.

92.     Defendant Columbia has illegally and impermissibly retained property belonging to the Foundation and has converted said property to its own benefit.

## COUNT I

**UNFAIR COMPETITION IN VIOLATION OF FEDERAL LAW**

93.     As a separate cause of action and ground for relief, the Foundation alleges that Defendants have been, and continue to be, engaged in false designation of origin, false representations of fact and other acts of unfair competition of a type proscribed by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The Foundation realleges and incorporates by reference Paragraphs 1 through 92 as part of this count.

94.     Defendants have used, and continue using, the Foundation's ENCYCLOPÆDIA IRANICA Marks in commerce in connection with the advertising and sale of publications in a manner that creates a likelihood of confusion, mistake or deception among prospective purchasers, thereby inducing consumers and others to believe, contrary to fact, that the goods or services sold by Defendants are rendered, sponsored, otherwise approved by, or connected with the Foundation, which acts of Defendants have damaged, impaired and diluted that part of the Foundation's goodwill symbolized by its ENCYCLOPÆDIA IRANICA Marks to the Foundation's immediate and irreparable damage.

95.     Defendants' use of marks confusingly similar to those owned by the Foundation, and Defendants' dissemination of false allegations of trademark ownership in connection with the advertising and sale of Defendants' goods or services in commerce, constitute use of false designations of origin and false and misleading representations within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.     Defendants' use of marks confusingly similar to those of the Foundation and its dissemination of false and misleading representations constitute unfair competition entitling the

Foundation to remedies pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1117.

97.     Defendants' acts of false designation of origin, false representation and false advertising have caused the Foundation irreparable injury, loss of reputation and pecuniary damages.  Unless enjoined by this Court, Defendants will continue the acts of unfair competition complained of herein to the Foundation's immediate and irreparable damage.

## COUNT II

### UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF NEW YORK  STATUTORY LAW

98.     As a separate cause of action and ground for relief, the Foundation alleges that Defendants have and are engaged in consumer-oriented conduct which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of New York General Business Law § 349.  The Foundation  incorporates by reference the allegations contained in paragraphs 1 through 97 above as part of this count.

99.     Defendants have used and are using counterfeit and infringing marks in connection with the unauthorized advertising and selling of Unauthorized Fascicle 4 in interstate commerce in such a manner as to create a likelihood of confusion among prospective purchasers and to unfairly and deceptively compete with the Foundation.

100.     Defendants' use of the counterfeit and infringing marks induces purchasers and others to believe, contrary to fact, that the goods sold by Defendants are rendered, sponsored, otherwise approved by, or connected with the Foundation.

101.     Defendants' acts have damaged, impaired, and diluted that part of the Foundation's goodwill symbolized by its ENCYCLOPÆDIA IRANICA Marks to the Foundation's immediate and irreparable damage.

102.     Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.  Defendants' false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers.

103.     The aforesaid acts of Defendants constitute willful and deliberate unfair competition under the common law of New York. Defendants' acts of unfair competition have caused the Foundation irreparable injury, loss of reputation, and pecuniary damages. Unless enjoined by this Court, Defendants will continue said unlawful acts of willful and deliberate unfair competition to the Foundation's immediate and irreparable damage.

<u>COUNT III</u>

**TRADEMARK INFRINGEMENT IN VIOLATION OF N.Y. GBL § 360-k**

104.     The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 103 above.

105.     As a separate cause of action and ground for relief, the Foundation alleges that Defendants have and are engaged in acts of infringement in violation of N.Y. GBL § 360-k.

106.     The Foundation has registered the ENCYCLOPÆDIA IRANICA Marks with the New York Department of State effective July 2, 2019.

107.     Defendants have copied the Foundation's ENCYCLOPÆDIA IRANICA Marks and used them to market the Counterfeit Product with a deliberate intent to cause confusion, mistake and deception among prospective customers.

108.     Defendants have used, and continue to use, the Foundation's ENCYCLOPÆDIA IRANICA Marks in connection with the advertising and selling of Unauthorized Fascicle 4 in this district and in other states, in commerce, in such a manner as to create a likelihood of

confusion, mistake, or deception among actual and prospective consumers.  Said acts have damaged, impaired, and diluted that part of goodwill symbolized by the Foundation's ENCYCLOPÆDIA IRANICA Marks and the Foundation has suffered immediate and irreparable harm.

109.    Defendants' unauthorized use of the Foundation's ENCYCLOPÆDIA IRANICA Marks on the Counterfeit Product, and unauthorized use of the Foundation's ENCYCLOPÆDIA IRANICA Mark on the Counterfeit Product, in the manner alleged constitute trademark infringement within the meaning of N.Y. GBL § 360-k.

110.    Defendants had actual knowledge of the Foundation's exclusive right to use the Foundation's ENCYCLOPÆDIA IRANICA Marks when it engaged in the conduct complained of herein. Thus, Defendants have willfully and deliberately engaged in the aforesaid acts of infringement with an intent to injure the Foundation and to deceive the public.

111.    The aforesaid acts of Defendants have caused, and are causing, irreparable harm to the Foundation and, unless permanently restrained by this Court, said irreparable injury will continue. The Foundation has no adequate remedy at law.

**COUNT IV**

**TRADEMARK DILUTION IN VIOLATION OF N.Y. GBL § 360-l**

112.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 111 above.

113.    As a separate cause of action and ground for relief, the Foundation alleges that Defendants have, and continue to be, engaged in acts of trademark dilution in violation of N.Y. GBL § 360-k.

114.    The Foundation's ENCYCLOPÆDIA IRANICA Marks are distinctive as the Foundation has used such marks for over 30 years, thus acquiring secondary meaning in the marketplace.

115.    Defendants have, and continue to be, engaged in acts of that will dilute the ENCYCLOPÆDIA IRANICA Marks either as a result of blurring or tarnishment.

116.    The aforesaid acts of Defendants have caused, and are causing, irreparable harm to the Foundation and, unless permanently restrained by this Court, said irreparable injury will continue.  The Foundation has no adequate remedy at law.

## COUNT V

## TRADEMARK INFRINGEMENT IN VIOLATION OF NEW YORK COMMON LAW

117.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 116 above.

118.    As a separate cause of action and ground for relief, the Foundation alleges that Defendants have, and continue to be, engaged in acts of trademark infringement in violation of the common law.

119.    Defendants have used, and continue to use, counterfeit and infringing marks in connection with the advertising and selling of Unauthorized Fascicle 4 in a manner which creates a likelihood of confusion among prospective purchasers, thereby inducing purchasers and others to believe, contrary to fact, that the goods and services sold by Defendants are rendered, sponsored, otherwise approved by, or connected with the Foundation, which acts of Defendants have damaged, impaired and diluted that part of the Foundation's goodwill symbolized by the ENCYCLOPÆDIA IRANICA Marks owned by the Foundation, to the Foundation's immediate and irreparable damage.

120.    The nature, probable tendency and effect of Defendants' use of the same mark in the manner alleged is to enable Defendants to deceive the public by passing off its goods as being rendered, sponsored, or otherwise approved by or connected with the Foundation.

121.    Defendants' use of the same marks as owned by the Foundation in connection with the advertising and selling of Unauthorized Fascicle 4 is likely to cause confusion, mistake or deception as to the source or origin of Defendants' goods and constitutes infringement of the Foundation's ENCYCLOPÆDIA IRANICA Marks under the common law of the State of New York.

122.    Defendants' acts of infringement have caused the Foundation irreparable injury, loss of reputation and pecuniary damages.  Unless enjoined by this Court, Defendants will continue these acts of infringement thereby deceiving the public and causing the Foundation immediate and irreparable damage.

## COUNT VI

## UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW

123.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 122 above.

124.    As a separate cause of action and ground for relief, the Foundation alleges that Defendants have, and continue to be, engaged in acts of unfair competition in violation of the common law.

125.    Furthermore, as a separate cause of action and ground for relief, the Foundation alleges that Defendants have, and continue to be, engaged in acts constituting willful and deliberate unfair competition under the common law.

126.    Defendants have used, and continue to use, counterfeit and infringing marks in

connection with the unauthorized advertising and selling of Unauthorized Fascicle 4 in interstate commerce in such a manner as to create a likelihood of confusion among prospective purchasers and to unfairly compete with the Foundation.

127.    Defendants' use of the counterfeit and infringing marks induces purchasers and others to believe, contrary to fact, that the goods sold by Defendants are rendered, sponsored, otherwise approved by, or connected with the Foundation.

128.    Defendants' acts have damaged, impaired, and diluted that part of the Foundation's goodwill symbolized by its ENCYCLOPÆDIA IRANICA Marks to the Foundation's immediate and irreparable damage.

129.    Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.  Defendants' false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers.

130.    The aforesaid acts of Defendants constitute willful and deliberate unfair competition under the common law of New York.  Defendants' acts of unfair competition have caused the Foundation irreparable injury, loss of reputation, and pecuniary damages.  Unless enjoined by this Court, Defendants will continue said unlawful acts of willful and deliberate unfair competition to the Foundation's immediate and irreparable damage.

## COUNT VII

### UNJUST ENRICHMENT

131.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 130 above.

132.    As a separate cause of action and ground for relief, the Foundation alleges that Defendants have been unjustly enriched as a result of the conduct complained of herein. By engaging in the conduct complained of herein, Defendants have unlawfully diverted revenue to which the Foundation is entitled and Defendants have obtained sums of money that they would not have obtained but for their unlawful conduct.

133.    The Foundation has created value and generated goodwill in its ENCYCLOPÆDIA IRANICA Marks.

134.    Defendants have traded on this value and goodwill, and on the Foundation's reputation, through its deceptive, unfair and unlawful practices.  As a result of Defendants' actions, they have generated economic and other benefits at the Foundation's expense.

135.    The Foundation has not authorized, acquiesced in, or otherwise agreed to Defendants' actions complained of herein.

136.    It would be inequitable, under these circumstances, for Defendants to retain the benefits accrued to them.

137.    Unless enjoined by this Court, Defendants will continue to gain unjust enrichment to the Foundation's immediate and irreparable damage.

## COUNT VIII

### TORTIOUS INTERFERENCE WITH CONTRACT (AUTHORS)

138.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 137 above.

139.    As a separate cause of action and ground for relief, the Foundation alleges that Defendants have tortiously interfered with the Foundation's legally enforceable contracts with certain authors who have submitted scholarly works for publication in the Encyclopædia fascicles

or volumes.

140.    The Foundation entered into Foundation Agreements with Authors, which released and/or assigned certain rights in their scholarly works, for the benefit of the Foundation.

141.    The Columbia Defendants knew about the Foundation Agreements.

142.    Upon information and belief, the Columbia Defendants knowingly and willfully induced Authors to violate their valid Foundation Agreements by signing Columbia Agreements in order for authors to have their scholarly works published in Unauthorized Fascicle 4.

143.    But for the Columbia Defendants' actions, various Authors would not have breached their agreements with the Foundation.

144.    The Columbia Defendants acted with malice or other improper means in inducing Authors to enter into the Columbia Agreements.

145.    The Columbia Defendants' interference with the Foundation Agreements caused damage to the Foundation in an amount to be determined at trial.

## COUNT IX

## TORTIOUS INTERFERENCE WITH CONTRACT (PULP)

146.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 145 above.

147.    The Foundation and Pulp entered into the Pulp Agreement for the development and maintenance of the Iranica Website.

148.    Upon information and belief, the Columbia Defendants knew about the Pulp Agreement.

149.    Upon information and belief, the Columbia Defendants knowingly and willfully induced Pulp to breach the Pulp Agreement by causing Pulp to divulge confidential information.

150. But for the Columbia Defendants' actions, Pulp would not have breached the Pulp Agreement.

151. The Columbia Defendants' interference with the Pulp Agreement caused damage to the Foundation in an amount to be determined at trial.

### COUNT X

### TORTIOUS INTERFERENCE WITH CONTRACT (CLARIVATE)

152. The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 151 above.

153. The Foundation entered into the ScholarOne Contract with Clarivate.

154. Upon information and belief, the Columbia Defendants knew about the ScholarOne Contract.

155. Upon information and belief, the Columbia Defendants knowingly and willfully induced Clarivate to breach the ScholarOne Contract by causing Clarivate to impermissibly suspend the Foundation's access to the ScholarOne Database in violation of the ScholarOne Contract.

156. But for the Columbia Defendants' actions, Clarivate would not have breached the ScholarOne Contract.

157. The Columbia Defendants' interference with the ScholarOne Contract caused damage to the Foundation in an amount to be determined at trial.

### COUNT XI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

158. The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 157 above.

159.    Because the Foundation Release had been in use for many years, the Foundation had a reasonable expectation that Authors would enter into agreement with the Foundation through the execution of Foundation Releases related to scholarly works to be included in future Encyclopædia fascicles or volumes.

160.    The Foundation's expectation was reasonable because Yarshater, as Editor-in-Chief of the Encyclopaedia since its inception, had previously released the rights to the scholarly works included in the Encyclopaedia to the Foundation.

161.    The Columbia Defendants knew that the Foundation reasonably expected the Foundation Releases would continue to be used for scholarly works to be included in Encyclopædia fascicles or volumes.

162.    The Columbia Defendants purposefully interfered with the Foundation's legitimate expectation that the Foundation Release would continue to be signed by Authors whose works would appear in subsequent Encyclopædia fascicles or volumes.

163.    The Columbia Defendants' interference caused damage to the Foundation in an amount to be determined at trial.

## COUNT XII

## CONVERSION

164.    The Foundation realleges and incorporates by reference the allegations contained in paragraphs 1 through 163 above.

165.    On or about April 1, 2019, counsel for the Foundation sent a letter to Columbia requesting "immediate access to its records, documents, and assets (books, artwork, etc.) from the [Center] so that such property can be catalogued and removed from Columbia premises, no later than April 15, 2019." *See* **Exhibit L** - April 1, 2019 Letter.

166.     Counsel for the Foundation provided Columbia with the Foundation Property List detailing some of the Foundation's property housed at Columbia.

167.     The Foundation is the rightful owner of the property listed on the Foundation Property List.

168.     Columbia has refused the Foundation access to its records, documents, and assets and has failed to return to the Foundation any of the items on the Foundation Property List.

169.     On information and belief Columbia's conduct was deliberately calculated to assist the Defendants in their unlawful acts of trademark infringement, trademark dilution, false designation of origin, unfair competition and tortious interference and to deprive the Foundation of evidence supporting its claims.

170.     Columbia has illegally and impermissibly retained property belonging to the Foundation and said conduct has caused pecuniary damage and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for judgment against Defendants as follows:

(1)     Pursuant to 15 U.S.C. § 1116, and the laws of the State of New York, that Defendants and each of its agents, employees, attorneys, assigns, and all others in privity or acting in concert with it be preliminarily and permanently enjoined from:

(a) continuing to withhold property owned by the Foundation and that they be ordered to immediately deliver said property to the Foundation at Defendants' own expense;

(b) Using or authorizing others to use the ENCYCLOPÆDIA IRANICA Marks, or any other name or mark containing the words ENCYCLOPÆDIA IRANICA, or any confusingly similar names or marks or any domain name similar to the Foundation's

Iranica Marks, in the advertising or sale of any goods or services;

(c) Using or authorizing others to use in any manner any service mark, trademark, trade name, domain name, trade dress, words, abbreviations, designs, colors, arrangements, collocations, or any combinations thereof which would imitate, resemble or suggest the Foundation's well known Iranica Marks;

(d) Otherwise infringing or diluting the Foundation's Iranica Marks;

(e) Unfairly competing with the Foundation, diluting the distinctiveness of the Foundation's well known Iranica Marks, or otherwise injuring the Foundation's business reputation in any manner;

(f) Making false or disparaging statements concerning the Foundation, its officers, employees, or its products; and

(g) Interfering with the Foundation's contractual relations or prospective contractual relations.

(2)      Pursuant to 15 U.S.C. § 1118 and the laws of the State of New York, Defendants be directed to deliver up for destruction all advertisements, labels, signs, prints, packages, wrappers, receptacles and all other materials in its possession or under its control that resemble the Foundation's Iranica Marks, or any other name or mark containing the Iranica Marks, or any other reproduction, counterfeit, copy or colorable imitation of the Foundation's Iranica Marks, and other means of making or duplicating the same.

(3)      Pursuant to 15 U.S.C. § 1117 and the laws of the State of New York, Defendants account and pay to the Foundation actual and/or statutory damages in an amount sufficient to fairly compensate the Foundation for the injury it has sustained, punitive damages in an amount sufficient to deter Defendants from engaging in acts of the type complained of herein, and all

profits which are attributable to the infringing sale of goods or services under the names, marks, trade dress and domain names complained of herein, and further that the amount of the monetary award granted herein be trebled in view of the willful and deliberate nature of Defendants' unlawful conduct.

(4)    Pursuant to 15 U.S.C. § 1117 and the laws of the State of New York, Defendants be ordered to pay to the Foundation the costs of this action and the Foundation's attorneys' fees.

(5)    Defendants be ordered to make an accounting of all income and all profits derived from the sale of products under any mark owned by the Foundation, and be directed to turn over to this Court all records documenting the manufacture, sale, or receipt of things involved in violating the Foundation's Iranica Marks.

(6)    The Foundation be granted such other, further, different or additional relief as this court deems equitable and proper.

## DEMAND FOR TRIAL BY JURY

The Foundation demands a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

September 13, 2019                                        Respectfully submitted,

*/s/ Marylee Jenkins*
Marylee Jenkins
Michael Scarpati
**ARENT FOX LLP**
1301 Avenue of the Americas, Floor 42
New York, N.Y. 10019
Tel. (212) 484-3900
marylee.jenkins@arentfox.com
michael.scarpati@arentfox.com

Michael Grow
**ARENT FOX LLP**
1717 K Street NW
Washington, D.C. 20006
Tel. (202) 857-6000
michael.grow@arentfox.com

*Attorneys for Plaintiff*
*Encyclopaedia Iranica Foundation, Inc.*