**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENCYCLOPAEDIA IRANICA FOUNDATION, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, ELTON DANIEL, BRILL USA, INC. AND KONINKLIJKE BRILL N.V., <br><br> *Defendants.* | No. 19-cv-8562 (AT) (KNF) <br><br><br> **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Encyclopaedia Iranica Foundation, Inc. ("Plaintiff" or "EIF"), by its undersigned counsel, brings this action against Defendants The Trustees of Columbia University in the City of New York ("Columbia"), Elton Daniel ("Daniel"), Koninklijke Brill N.V. ("Koninklijke Brill"), and Brill USA, Inc. ("Brill USA") (Columbia and Daniel are collectively referred to as the "Columbia Defendants"; Koninklijke Brill and Brill USA are collectively referred to as the "Brill Defendants"; the Columbia Defendants and the Brill Defendants are collectively referred to as "Defendants"), and respectfully alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff EIF is a not-for-profit foundation that has owned and published the *Encyclopaedia Iranica* (the "Encyclopaedia") for decades.  The Encyclopaedia is a research tool for scholars, specialists, and students of Iranian studies and related fields.  Professor Ehsan Yarshater ("Yarshater"), a visionary scholar and well-known historian of Persian language and literature, conceived of the Encyclopaedia in the 1970s, and established EIF in 1990 to, among

other things, promote the cause of the Encyclopaedia and to ensure its continued publication. Under Yarshater's editorship and until his death in 2018, sixteen volumes containing over 100 fascicles (or installments) of the Encyclopaedia were published. Yarshater designated EIF as the owner of the intellectual property rights in the Encyclopaedia and assigned or otherwise transferred the trademarks, copyrights, and other intellectual property rights that he owned in the Encyclopaedia to EIF. Defendants have attempted to steal EIF's intellectual property rights, as well as its books, artwork, and other items of personal property, and to usurp its rights in and to the Encyclopaedia. This action is brought to redress Defendants' misconduct and to remedy the harm caused by Defendants' illegal actions.

2.      Since approximately 2003, EIF is and has been the listed author, publisher, claimant, and copyright holder of all Encyclopaedia volumes and fascicles. Further, EIF has publicly held itself out as the author, publisher, and copyright holder of multiple volumes and dozens of fascicles of the Encyclopaedia for nearly two decades, with the knowledge of and without any objection from Columbia. Since its inception, EIF has spent millions of dollars on the preparation and publication of the Encyclopaedia.

3.      As Yarshater's health began to fail, Columbia hired Daniel to replace Yarshater as the interim Director of the Center for Iranian Studies (the "Center") in approximately January 2017. Columbia and Daniel thereafter schemed to usurp EIF's intellectual property rights in the Encyclopaedia. As part of this scheme, the Columbia Defendants hired the Brill Defendants to publish and distribute counterfeit Encyclopaedia publications and to create a counterfeit website, each of which infringed EIF's copyrights and trademarks in the Encyclopaedia and falsely suggested endorsement by or on behalf of Yarshater. Additionally, the Columbia Defendants tortiously interfered with EIF's relationships with the authors who wrote articles for the

2

Encyclopaedia and the vendors that EIF hired to assist its publication of the Encyclopaedia. Columbia also prevented EIF from accessing the offices that it had used for almost thirty years while refusing to return its personal property and business records.

## THE PARTIES

4.      EIF is a not-for-profit corporation organized and existing under the laws of the State of New York, which formerly operated at 450 Riverside Drive, New York, New York in a building that, upon information and belief, is owned by Columbia University, and now has its principal place of business at 2472 Broadway, Suite 237, New York, New York 10025.

5.      Upon information and belief, Defendant Columbia is a not-for-profit educational institution existing under the laws of the State of New York with a place of business at 615 West 131st Street, New York, New York 10027.

6.      Upon information and belief, Defendant Daniel is an individual, who is an employee of Columbia, with an office at 450 Riverside Drive, Suite 4, New York, New York 10027.

7.      Upon information and belief, Defendant Koninklijke Brill is a foreign for-profit corporation with an office located at Plantijnstraat 2, 2321 JC Leiden, the Netherlands.  Upon information and belief, Defendant Brill USA is a domestic for-profit corporation with an office located at 2 Liberty Square, 11th Floor, Boston, Massachusetts 02109.  Upon information and belief, Brill USA is a wholly owned subsidiary of Koninklijke Brill and serves as a mere department and United States agent of Koninklijke Brill.  According to Koninklijke Brill's 2020 annual report, "Brill [defined to include Koninklijke Brill and its subsidiaries, including Brill USA] is a centrally managed company with several corporate and delegated functions and with its headquarters in Leiden, the Netherlands.  Furthermore, Brill has offices in Boston (US), Paderborn

3

(GE), Singapore, and Beijing." In addition, Brill USA's 2020 annual report reflects that the same individual serves as both Koninklijke Brill's and Brill USA's Chief Executive Officer.

### JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the claims brought under the Copyright Act and Lanham Act under 28 U.S.C. §§ 1331 and 1338(a). This Court also has jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the New York State and common law claims because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendant Columbia is organized under the laws of the State of New York and maintains its principal place of business in the State of New York; upon information and belief, Defendant Daniel works and maintains a residence in the State of New York; the claims at issue arise out of business that Defendants transacted in New York State; and Defendants' wrongful acts occurred within or were directed toward the State of New York and have caused injury to EIF within this judicial district. Among other things, Defendants have committed and continue to commit acts of copyright and trademark infringement and/or other tortious acts causing harm in this district and elsewhere in New York.

10.     Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events or acts giving rise to the claims occurred in this district, a substantial part of the property that is the subject of this action is situated in this district, and EIF resides in this district.

## FACTUAL BACKGROUND

### A.  Professor Yarshater

11.      Professor Yarshater was a well-known Iranian historian and a distinguished scholar of Persian language and literature.  In or about 1958, Yarshater became a visiting professor of Indo-Iranian at Columbia University.  He served as Chair of Iranian Studies from approximately 1961 until his retirement from that position in 1990, at which time he was granted the title of Professor *Emeritus* and served as a special lecturer until 2002.  Yarshater consistently pursued independent academic activities while holding his positions at Columbia.  Among other things, Yarshater authored approximately 16 books, over 300 articles, and over 150 book reviews. Yarshater also served as the Director of the Center from approximately the 1960s until his retirement in 2016.

### B.  Yarshater Creates the Encyclopaedia

12.      In approximately 1972, Yarshater conceived of the Encyclopaedia as a research tool responding to the needs of scholars, specialists, and students in Iranian studies and related fields.  The Encyclopaedia covers all aspects of Iranian history and culture in various parts of the world, as well as all Iranian languages and literatures, and it facilitates the entire range of Iranian studies research from archeology to political science.

13.      From its inception until approximately 2017, Yarshater served as the Editor of the Encyclopaedia.

14.      The Encyclopaedia is published in volumes. The articles comprising the volumes are initially published in fascicles.  Once a sufficient number of fascicles are published, those articles are bound in volumes.

### C.  **Yarshater Forms EIF**

15.     In 1990, Yarshater founded EIF to carry out research on all aspects of Iranian and related studies, to promote the cause of the Encyclopaedia and assure the continuation thereof, to establish an endowment fund, and to publish, disseminate, and distribute the results of its work. Yarshater served as the President of EIF from its inception until his death in 2018.

16.     Yarshater assigned or otherwise transferred the trademarks, copyrights, and other intellectual property rights that he owned in the Encyclopaedia to EIF.  Additionally, Yarshater's probated will gave EIF half of the residuary of his estate, including any endorsement rights in and to his name, persona, and likeness and any intellectual property rights that he held at the time of his death.

17.     Since its founding, EIF has used the mark "ENCYCLOPAEDIA IRANICA FOUNDATION" (the "Name Mark") in commerce to identify itself.

### D.  **Yarshater and/or EIF Publish Encyclopaedia Volumes I through XVI and Their Associated Fascicles**

18.     After signing an agreement with a publisher in or about 1981, Yarshater caused the first fascicle of the Encyclopaedia to be published in or about 1982.  Yarshater designated this fascicle as Volume I, Fascicle 1.  After seven additional fascicles of Volume I had been published, the full version of Volume I of the Encyclopaedia was published in or about 1985.

19.     Volumes II to XVI, and their associated fascicles, were published in similar fashion between about 1985 to 2020.

20.     Each fascicle of Volumes I through XVI, as well as the full version of each of these Volumes, bore the name "ENCYCLOPAEDIA IRANICA" (the "Word Mark") and a distinctive fleur-de-lis design mark (the "Logo Mark") on the cover.  The Word Mark and Logo Mark are collectively referred to as the "Iranica Marks" herein.  The illustrative covers of Volume I, Fascicle

6

1 and the full version of Volume I are set forth below (the covers of the remaining fascicles and volumes are substantially similar):





21.     When first published, the full versions of Volumes I through X and their associated fascicles included a copyright notice that identified the owner of the copyright as either Yarshater or a corporation that he established and controlled that was not affiliated with Columbia.  Starting with the full version of Volume XI, published in 2003, all of the remaining Volumes and their

associated fascicles—including the full versions of Volumes XI through XVI and all fascicles associated with those Volumes—included a copyright notice that identified EIF as the owner of the copyright.  In addition, on republication, various Encyclopaedia Volumes prior to Volume XI included a copyright notice that identified EIF as the owner of the copyright.  Upon information and belief, Columbia knew that the copyright notices contained in Volumes I through XVI and their associated fascicles listed EIF, Yarshater, or an entity controlled by Yarshater as the copyright owner of these publications at the time they were published.

22.     From approximately 1997 to the present, the Encyclopaedia, or a portion of it, has been available for free on the internet.  Since approximately 2010, the Encyclopaedia's website has been located at "www.iranicaonline.org" (the "Iranica Website").  EIF is the owner of the content posted on the Iranica Website.  The webpages on the Iranica Website contained copyright management information ("CMI") that included a copyright notice at the bottom listing the copyright owner of the webpages as "Encyclopaedia Iranica" or "Encyclopaedia Iranica Foundation" (the "Iranica Website CMI").

**E.  EIF's Copyright and Trademark Registrations**

23.     EIF registered multiple copyrights in Encyclopaedia volumes and fascicles with the United States Copyright Office (the "EIF Copyright Works").  The EIF Copyright Works include:

| Work | Registration Number |
|---|---|
| Encyclopaedia Volume XI, Fascicle 6 | TX 5-886-599 |
| Encyclopaedia Volume XII, Fascicle 1 | TX 5-886-600 |
| Encyclopaedia Volume XII, Fascicle 2 | TX 5-886-601 |
| Encyclopaedia Volume XII, Fascicle 3 | TX 5-886-602 |
| Encyclopaedia Volume XII, Fascicle 4 | TX 6-020-061 |
| Encyclopaedia Volume XII, Fascicle 5 | TX 6-160-709 |
| Encyclopaedia Volume XII, Fascicle 6 | TX 6-160-711 |
| Encyclopaedia Volume XIII, Fascicle 1 | TX 6-160-710 |
| Encyclopaedia Volume XIII, Fascicle 2 | TX 6-247-285 |
| Encyclopaedia Volume XIII, Fascicle 3 | TX 6-565-251 |
| Encyclopaedia Volume XIII, Fascicle 4 | TX 6-558-122 |

| Encyclopaedia Volume XIII, Fascicle 5 | TX 6-558-121 |
| Encyclopaedia Volume XIII, Fascicle 6 | TX 6-626-004 |
| Encyclopaedia Volume XIV, Fascicle 1 | TX 6-625-635 |
| Encyclopaedia Volume XIV, Fascicle 2 | TX 6-843-795 |
| Encyclopaedia Volume XIV, Fascicle 3 | TX 6-843-797 |
| Encyclopaedia Volume XIV, Fascicle 4 | TX 6-843-798 |
| Encyclopaedia Volume XIV, Fascicle 5 | TX 6-902-459 |
| Encyclopaedia Volume XIV, Fascicle 6 | TX 6-902-490 |
| Encyclopaedia Volume XV, Fascicle 1 | TX 6-978-790 |
| Encyclopaedia Volume XV, Fascicle 2 | TX 7-040-264 |
| Encyclopaedia Volume XV, Fascicle 3 | TX 7-040-276 |
| Encyclopaedia Volume XV, Fascicle 4 | TX 7-258-027 |
| Encyclopaedia Volume XV, Fascicle 5 | TX 7-338-068 |
| Encyclopaedia Volume XV, Fascicle 6 | TX 7-399-199 |
| Encyclopaedia Volume XVI, Fascicle 1 | TX 8-723-423 |
| Encyclopaedia Volume XVI, Fascicle 2 | TX 8-723-438 |
| Encyclopaedia Volume XVI, Fascicle 3 | TX 8-723-442 |

24.     Upon information and belief, Columbia knew of the Copyright Registrations and their contents at or around the time that they were filed.

25.     EIF has registered the Word Mark and the Name Mark with the United States Patent and Trademark Office, as Reg. Nos. 5,877,427 and 5,921,137, respectively.

26.     EIF has registered the Word Mark and the Name Mark with the New York State Department of State, as Reg. Nos. R33430, S24729, and S24732 for the Word Mark, and Reg. Nos. S24728, S24730, and S24731 for the Name Mark.

27.     EIF is the owner of copyright registrations covering the content hosted on the Iranica Website, including: (1) U.S. Copyright Reg. No. TX 8-914-235, entitled "EIF Website (2010)" and covering the content of the Iranica Website as published in 2010; and (2) U.S. Copyright Reg. No. TX 8-915-076, entitled "EIF Website (2017)" and covering the content of the Iranica Website as published in 2017.

**F.   Defendants Scheme to Steal EIF's Property**

28.     After Yarshater's health began to fail, in or around January 2017, Daniel became

the interim Director of the Center replacing Yarshater.

29.     During the time that Yarshater served as Director of the Center, EIF donated millions of dollars to Columbia.  After Daniel became interim Director of the Center, Columbia and Daniel schemed to obtain millions more from EIF.  Columbia and Daniel proposed that Columbia would rename the Center as the "Ehsan Yarshater Center for Iranian Studies" in exchange for an $11 million gift to Columbia.  Columbia and Daniel proposed that EIF contribute a substantial portion of the proposed gift amount.  EIF rejected this proposal.

30.     Columbia and Daniel also schemed to usurp EIF's intellectual property in the Encyclopaedia.  As part of this scheme, Columbia and Daniel hired the Brill Defendants to publish and distribute counterfeit Encyclopaedia publications and to create a counterfeit website, each of which infringed EIF's copyrights and trademarks in the Encyclopaedia and falsely suggested endorsement by or on behalf of Yarshater.  Additionally, the Columbia Defendants tortiously interfered with EIF's relationships with the authors who wrote articles for the Encyclopaedia and the vendors that EIF hired to assist its publication of the Encyclopaedia.  Columbia also prevented EIF from accessing the offices that it had used for almost 30 years while refusing to return its personal property and business records.

**1.   <u>Columbia Defendants Hire the Brill Defendants to Publish and Distribute a Counterfeit Volume and Counterfeit Fascicles of the Encyclopaedia</u>**

31.     Upon information and belief, in or around 2018, Daniel and other Columbia employees knowingly caused Columbia to enter into a contract with the Brill Defendants for the publication of counterfeit portions of the Encyclopaedia.

32.     In or about and between December 2018 and October 2020, the Brill Defendants published counterfeit Encyclopaedia Volume XVI, Fascicles 4 through 6 (the "Counterfeit Fascicles").  In or around July 2021, the Brill Defendants published a counterfeit volume of the

Encyclopaedia that they marketed as Volume XVI of the Encyclopaedia ("Counterfeit Volume XVI" and, collectively with the Counterfeit Fascicles, the "Counterfeit Publications"). Counterfeit Volume XVI included the articles that EIF published in Encyclopaedia Volume XVI, Fascicles 1 through 3, over which EIF holds registered copyrights. Upon information and belief, the Brill Defendants' publication of the Counterfeit Publications was done with the knowledge and at the direction of Columbia and Daniel.

33.     The Counterfeit Publications contained the Iranica Marks on the cover. The Counterfeit Publications also contained Yarshater's name on the cover, which made it falsely appear that Yarshater endorsed these publications. All of the Counterfeit Publications were published after Yarshater's death without EIF's consent or permission. The cover of counterfeit Encyclopaedia Volume XVI, Fascicle 4 is set forth below:



34.     Upon information and belief, the Brill Defendants caused the Counterfeit

Publications to be offered for sale, sold, distributed, and disseminated in the United States, including within the Southern District of New York.

35.      At no time did Defendants obtain authorization from EIF to use the Iranica Marks on the Counterfeit Publications.  EIF, as the part owner of Yarshater's posthumous endorsement rights in and to his name, persona, and likeness did not authorize Defendants to use Yarshater's name on the covers of the Counterfeit Publications.

### 2.   Defendants Create Counterfeit Encyclopaedia Websites

36.      Upon information and belief, the Columbia Defendants created a counterfeit Encyclopaedia website accessible at "encyclopaediairanica.com" (the "First Counterfeit Website").

37.      The First Counterfeit Website was active and accessible via the internet during a portion of 2020.  The First Counterfeit Website used the Word Mark without EIF's authorization. The First Counterfeit Website included webpages that were identical or nearly identical to webpages on the Iranica Website, except that the First Counterfeit Website removed and altered the Iranica Website CMI and replaced it with a copyright notice that identified Columbia as the copyright owner.

38.      Upon information and belief, Columbia and Daniel intentionally removed and altered the Iranica Website CMI from the webpages of the First Counterfeit Website, including, but not limited to, the copyright notices on the webpages containing Encyclopaedia articles owned by EIF.

39.      Upon information and belief, Columbia's and Daniel's distribution of the First Counterfeit Website was done with knowledge that the Iranica Website CMI had been removed and altered.

40.     Upon information and belief, the Columbia Defendants caused the First Counterfeit Website to be deactivated in or about 2020, so that it was no longer accessible to the public.

41.     Upon information and belief, after deactivating the First Counterfeit Website, Columbia and Daniel conspired with the Brill Defendants to create a counterfeit website accessible at "http://referenceworks.brillonline.com/browse/encyclopaedia-iranica-online" (the "Second Counterfeit Website").

42.     The First and Second Counterfeit Websites used, and the Second Counterfeit Website continues to use, the Iranica Marks without EIF's authorization.  The First and Second Counterfeit Websites included, and the Second Counterfeit Website continues to include articles and portions of the Encyclopaedia for which EIF owns the copyright, including, but not limited to, the articles that EIF first published in the EIF Copyright Works over which EIF holds registered copyrights.

43.     EIF has not authorized, licensed, or permitted the Defendants to copy or distribute any Encyclopaedia articles through the First or Second Counterfeit Websites.

### 3.    <u>Columbia and Daniel Interfered with EIF's Agreements with Encyclopaedia Authors</u>

44.     Authors slated to have their articles published in the Encyclopaedia ("Authors") entered into agreements to release and assign any copyright rights that they held in these articles to Yarshater or to EIF (the "EIF Releases").

45.     Upon information and belief, Columbia and Daniel contacted some or all of the Authors who entered into the EIF Releases and asked the Authors to sign new release agreements that assigned to Columbia the copyright rights that had been previously assigned to EIF (the "Columbia Releases").   Upon information and belief, a number of Authors, who previously assigned copyright rights to EIF, signed Columbia Releases.

**4.  Columbia and Daniel Interfered with EIF's Website Hosting Agreement**

46.     In or around September 2009, EIF contracted with Electric Pulp ("Pulp") for the development and maintenance of the Iranica Website (the "Pulp Agreement").  Yarshater signed the Pulp Agreement on behalf of EIF as its President.

47.     The Pulp Agreement contains a non-disclosure clause prohibiting either party from disclosing "any Confidential Information to any person(s) whatsoever, except with the prior written consent of the other party or as required by law."

48.     The Pulp Agreement provided that EIF "will retain all ownership of such and all properties provided to [Pulp]."  The Pulp Agreement further provided that "[Pulp] shall not hinder in any shape or form complete access and ownership rights to the Client's properties, intellectual or otherwise."

49.     Upon information and belief, Columbia and Daniel had actual knowledge of the Pulp Agreement.

50.     In or about January 2019, Columbia's associate general counsel sent a letter (the "Columbia Pulp Letter") to Pulp that falsely stated that administrative privileges for the Iranica Website were transferred in error to EIF.  The Columbia Pulp Letter also falsely suggested that EIF was not a party to the Pulp Agreement.  The Columbia Pulp Letter directed Pulp to "immediately transfer access [to the Iranica Website] back to Columbia."

51.     After receiving the Columbia Pulp Letter, Pulp granted administrator-level access to the Iranica Website to Columbia, thereby breaching the Pulp Agreement.  Pulp subsequently denied EIF full access to its property that it had provided to Pulp by prohibiting EIF from making changes to the Iranica Website without the agreement of Columbia, thereby breaching the Pulp Agreement.

### 5. **Columbia and Daniel Interfered with EIF's Clarivate Software Contract**

52.      In or around June 2017, EIF entered into a contract with Clarivate Analytics (US) LLC ("Clarivate") to use Clarivate's publication management system and software known as ScholarOne ("Clarivate Contract").  The Clarivate Contract had an initial term of 12 months and a renewal term of 12 months.  The Clarivate Contract automatically renewed unless either party provided written notice declining to renew before the end of the initial term.  Neither EIF nor Clarivate provided written notice that it declined to renew the Clarivate Contract.

53.      Pursuant to the Clarivate Contract, EIF provided articles and other materials related to the publication of the Encyclopaedia to Clarivate for storage (the "ScholarOne Content").  EIF designated one of its employees, who later became an employee of Columbia, as one of the site administrators for the database that hosted the ScholarOne Content (the "Columbia Employee").

54.      The Clarivate Contract required Clarivate to ensure that the ScholarOne Content was "secure and inaccessible to unauthorized persons."

55.      The Clarivate Contract also provided that access to the ScholarOne Content would "be directed by [EIF]" and that Clarivate would "not disclose [EIF's] content except to support the hosted software or unless required by law."

56.      Upon information and belief, in or about October 2018, the Columbia Employee, acting at Columbia's and Daniel's direction, requested that Clarivate change the name of the party on the Clarivate Contract from EIF to Columbia.  EIF did not authorize Columbia, Daniel, or the Columbia Employee to have this communication with Clarivate.

57.      Based on this communication, Clarivate breached the Clarivate Contract by terminating it and denying EIF access to the ScholarOne Content.  Specifically, Clarivate informed EIF that EIF was "no longer a ScholarOne subscriber and was not authorized to receive [the ScholarOne Content]."

6. **Columbia Misappropriates and Converts EIF's Personal Property**

58.     From 1990 until approximately 2018, EIF's offices were located in the same building in which Yarshater resided, which was located at 450 Riverside Drive (the "Former EIF Offices").  Upon information and belief, the building in which the Former EIF Offices were located is owned by Columbia University.  Starting in approximately 2018, Columbia prevented EIF from accessing materials at the Former EIF Offices and refused to return its business records and personal property located at the Former EIF Offices, including, but not limited to, artwork and more than ten thousand books, despite EIF's demands for the return of its property.

59.     As reflected in a notarized letter dated June 28, 2014, Yarshater donated to EIF his entire collection of books, which, as of approximately 2013, comprised approximately 12,230 volumes.  EIF stored these books at the Former EIF Offices.

60.     EIF also received more than 100 paintings donated by Iranian artists, which were stored at the Former EIF Offices.

61.     On or about April 1, 2019, EIF's counsel sent a letter to Columbia's President, Lee Bollinger, terminating its relationship with Columbia (the "April 2019 Letter").  The April 2019 Letter stated, *inter alia*:  "The actions taken by Columbia have left EIF with no alternative but to sever ties and take its *Encyclopaedia Iranica Project* elsewhere – to an institution that will properly support the project and give it the care that it rightfully deserves."  The April 2019 Letter further stated: "Dr. Daniel has sought to derail Columbia's relationship with EIF right from the beginning, and Columbia has given him unfettered liberties to violate EIF's intellectual property rights."

62.     The April 2019 Letter also requested "immediate access to its records, documents, and assets (books, artwork, etc.) from the [Center] so that such property can be catalogued and removed from Columbia premises, no later than April 15, 2019."  The April 2019 Letter attached a partial list detailing some of EIF's property housed at Columbia (the "EIF Property List").

63.     No one at Columbia, including Bollinger, ever responded to the April 2019 Letter, and Columbia has still not returned all of the property set forth on the EIF Property List.

64.     EIF is the rightful owner of property located at the Former EIF Offices, including, but not limited to, the property identified in the EIF Property List.

65.     Columbia has refused EIF access to its own records, documents, and assets, and has failed to return all of the items owned by EIF.

## COUNT ONE

### FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)
### (Against All Defendants)

66.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 65 above as if fully set forth herein.

67.     Defendants have been, and continue to be, engaged in false designation of origin, false representations of fact, and other acts of unfair competition of a type proscribed by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68.     EIF's Iranica Marks are inherently distinctive and have acquired distinctiveness.

69.     Defendants knowingly and willfully have used, and continue to use, the Iranica Marks without EIF's consent, in commerce, in connection with goods and services in a manner that creates a likelihood of confusion, mistake, and deception among prospective purchasers, thereby inducing consumers and others to believe, contrary to fact, that the goods and services sold and provided by Defendants are rendered, sponsored, otherwise approved by, and connected with EIF.  Defendants' acts have damaged, impaired, and diluted that part of EIF's goodwill symbolized by the Iranica Marks to EIF's immediate and irreparable damage.

70.     Defendants' acts of false designation of origin, false representation and false

17

advertising have directly and proximately caused EIF irreparable injury, loss of reputation, and pecuniary damages.  Unless enjoined by this Court, Defendants will continue the acts of false designation of origin, false representations of fact, and other acts of unfair competition complained of herein to EIF's immediate and irreparable damage.

## COUNT TWO

### TRADEMARK COUNTERFEITING AND INFRINGEMENT
### IN VIOLATION OF 15 U.S.C. § 1114
### (Against All Defendants)

71.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 70 above as if fully set forth herein.

72.    Defendants have and continue to be engaged in acts of trademark counterfeiting and infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73.    EIF is the registered owner of the Word Mark and owns all right, title, and interest in and to the Word Mark.

74.    The acts of Defendants alleged herein establish that they have used in commerce reproductions, counterfeits, copies, and colorable imitations of EIF's Word Mark, without EIF's consent, in connection with the sale, distribution, offering for sale, and advertising of goods and services.

75.    Defendants' improper and bad-faith use of EIF's Word Mark was committed with the intent to, and is likely to, cause confusion and mistake and to deceive consumers as to the source of origin of the Counterfeit Publications and the First and Second Counterfeit Websites. The Counterfeit Publications and the First and Second Counterfeit Websites are counterfeits and infringe EIF's rights in the Word Mark, in violation of 15 U.S.C. § 1114.

76.    Upon information and belief, Defendants had actual knowledge of EIF's exclusive

right to use EIF's Word Mark when they engaged in the conduct complained of herein and said conduct was willful, intentional, and done with knowledge that the marks used were counterfeit marks and would cause confusion or mistake or would deceive.

77.     Defendants' deliberate acts of trademark counterfeiting and infringement have damaged, impaired, and diluted EIF's goodwill and caused EIF immediate pecuniary loss and irreparable damage.   Unless enjoined by this Court, Defendants will continue these acts of trademark counterfeiting and infringement to EIF's immediate and irreparable damage.

## COUNT THREE

### FALSE ENDORSEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)
### (Against All Defendants)

78.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 77 above as if fully set forth herein.

79.     Defendants have been, and continue to be, engaged in false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     Yarshater is well known in the academic community and his identity carries consumer recognition among users and purchasers of the Encyclopaedia.

81.     Defendants knowingly and willfully have used, and continue to use, in commerce, indicia of Yarshater's identity and persona, including Yarshater's name, without EIF's consent, in connection with goods and services in a manner that creates a likelihood of confusion, mistake, and deception among prospective purchasers, thereby inducing consumers and others to believe, contrary to fact, that the goods and services sold and provided by Defendants are endorsed, rendered, sponsored, and otherwise approved by Yarshater.

82.     Defendants' acts of false endorsement have directly and proximately caused EIF irreparable injury, loss of reputation, and pecuniary damages.   Unless enjoined by this Court,

Defendants will continue the acts of false endorsement complained of herein to EIF's immediate and irreparable damage.

## COUNT FOUR

### TRADEMARK INFRINGEMENT IN VIOLATION OF N.Y. GBS § 360-k
### (Against All Defendants)

83.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants have and continue to be engaged in acts of infringement in violation of New York General Business Law ("GBS") Section 360-k.

85.     EIF has registered the Word Mark with the New York Department of State, and owns all right, title, and interest in and to the Word Mark.

86.     The acts of Defendants alleged herein establish that they have used, in commerce, reproductions, counterfeits, copies, and colorable imitations of EIF's Word Mark, without EIF's consent, in connection with the sale, distribution, offering for sale, and advertising of goods and services.

87.     Defendants' improper and bad-faith use of EIF's Word Mark was committed with the intent to, and is likely to, cause confusion and mistake and to deceive consumers as to the source of origin of the Counterfeit Publications and the First and Second Counterfeit Websites. The Counterfeit Publications and the First and Second Counterfeit Websites infringe EIF's rights in the Word Mark, in violation of New York GBS § 360-k.

88.     Upon information and belief, Defendants had actual knowledge of EIF's exclusive right to use EIF's Word Mark when they engaged in the conduct complained of herein and said conduct was willful, intentional, and done with knowledge that the marks used were counterfeit marks and would cause confusion or mistake or would deceive.

89.     Defendants' deliberate acts of trademark infringement have damaged, impaired, and diluted EIF's goodwill and caused EIF immediate pecuniary loss and irreparable damage. Unless enjoined by this Court, Defendants will continue these acts of trademark infringement to EIF's immediate and irreparable damage.

## COUNT FIVE

### TRADEMARK DILUTION IN VIOLATION OF N.Y. GBS § 360-l
### (Against All Defendants)

90.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 89 above as if fully set forth herein.

91.     Defendants have, and continue to be, engaged in acts of trademark dilution in violation of New York GBS § 360-l.

92.     EIF's Iranica Marks are inherently distinctive and have acquired distinctiveness.

93.     Defendants have, and continue to be, engaged in acts that will dilute the Iranica Marks either as a result of blurring or tarnishment.

94.     The aforesaid acts of Defendants have caused, and are causing, irreparable harm to EIF and, unless permanently restrained by this Court, said irreparable injury will continue.  EIF has no adequate remedy at law.

## COUNT SIX

### TRADEMARK INFRINGEMENT IN VIOLATION OF NEW YORK COMMON LAW
### (Against All Defendants)

95.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 94 above as if fully set forth herein.

96.     Defendants have, and continue to be, engaged in acts of trademark infringement in violation of New York State common law.

97.     The Iranica Marks are valid trademarks under New York State common law.

98.     The acts of Defendants alleged herein establish that Defendants have used in commerce reproductions, counterfeits, copies, and colorable imitations of EIF's Iranica Marks, without EIF's consent, in connection with the sale, distribution, offering for sale, and advertising of goods and services.

99.     Defendants' improper and bad-faith use of EIF's Iranica Marks was committed with the intent to, and is likely to, cause confusion and mistake and to deceive consumers as to the source of origin of the Counterfeit Publications and the First and Second Counterfeit Websites. The Counterfeit Publications and the First and Second Counterfeit Websites infringe EIF's rights in the Iranica Marks.

100.    Defendants' deliberate acts of trademark infringement have damaged, impaired, and diluted EIF's goodwill and caused EIF immediate pecuniary loss and irreparable damage. Unless enjoined by this Court, Defendants will continue these acts of trademark infringement to EIF's immediate and irreparable damage.

## COUNT SEVEN

### UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW
### (Against All Defendants)

101.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 100 above as if fully set forth herein.

102.    Defendants have, and continue to be, engaged in acts of unfair competition in violation of the common law.

103.    The acts of Defendants alleged herein establish that they have used, in commerce, reproductions, counterfeits, copies, and colorable imitations of EIF's Iranica Marks, without EIF's consent, in connection with the sale, distribution, offering for sale, and advertising of goods and

services.

104.    Defendants' improper and bad-faith use of EIF's Iranica Marks was committed with the intent to, and is likely to, cause confusion and mistake and to deceive consumers as to the source of origin of the Counterfeit Publications and the First and Second Counterfeit Websites. The Counterfeit Publications and the First and Second Counterfeit Websites infringe EIF's rights in the Iranica Marks.

105.    EIF has suffered, and will continue to suffer, irreparable harm from Defendants' conduct, unless they are enjoined by the Court.

## **COUNT EIGHT**

### **COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501**
**(Against All Defendants)**

106.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 105 above as if fully set forth herein.

107.    EIF is the copyright owner and registered copyright owner of the EIF Copyright Works.

108.    Defendants have manufactured, reproduced, publicly displayed, prepared derivative works of, distributed, and/or authorized copies of the EIF Copyright Works in Counterfeit Volume XVI and the First and Second Counterfeit Websites without the authorization or consent of EIF.

109.    Defendants' infringement was done knowingly and willfully.

110.    Defendants' infringement has caused substantial and irreparable harm to EIF for which EIF has no adequate remedy at law, and unless enjoined, Defendants will continue to cause substantial and irreparable harm to EIF.

111.    Based on Defendants' wrongful conduct, EIF is entitled to injunctive relief, actual

damages, and Defendants' profits in an amount to be proven at trial or, in the alternative, statutory damages, including for Defendants' willful infringement, as well as an award of EIF's reasonable attorneys' fees and costs.

**COUNT NINE**

**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(Against the Columbia Defendants)**

112.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 111 above as if fully set forth herein.

113.    Alternatively, to the extent the Columbia Defendants are not liable as direct infringers for the activities relating to the Second Counterfeit Website and Counterfeit Volume XVI, the Columbia Defendants are liable as contributory copyright infringers by authorizing the Brill Defendants to manufacture, reproduce, publicly display, prepare derivative works of, and distribute these infringing works and are therefore materially contributing to the infringement of the Second Counterfeit Website and Counterfeit Volume XVI.

114.    The Columbia Defendants' acts of contributory infringement were done knowingly and willfully.

115.    The Columbia Defendants' infringement has caused substantial and irreparable harm to EIF for which EIF has no adequate remedy at law, and unless enjoined, the Columbia Defendants will continue to cause substantial and irreparable harm to EIF.

116.    Based on the Columbia Defendants' wrongful conduct, EIF is entitled to injunctive relief, actual damages, and the Columbia Defendants' profits in an amount to be proven at trial or, in the alternative, statutory damages, including for the Columbia Defendants' willful contributory infringement, as well as an award of EIF's reasonable attorneys' fees and costs.

## COUNT TEN

### UNJUST ENRICHMENT
### (Against All Defendants)

117.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 116 above as if fully set forth herein.

118.    Defendants have been unjustly enriched in an amount to be proven at trial.  By engaging in the conduct complained of herein with respect to the Iranica Marks, Defendants have unlawfully diverted revenue to which EIF is entitled, and Defendants have obtained sums of money that they would not have obtained but for their unlawful conduct.

119.    EIF has created value and generated goodwill in the Iranica Marks.

120.    Defendants have traded on this value and goodwill, and on EIF's reputation, through their deceptive, unfair, and unlawful practices.  As a result of Defendants' actions, they have generated economic and other benefits at EIF's expense.

121.    EIF has not authorized, acquiesced in, or otherwise agreed to Defendants' actions complained of herein.

122.    It would be inequitable, under these circumstances, for Defendants to retain the benefits accrued to them.

123.    Unless enjoined by this Court, Defendants will continue to gain unjust enrichment to EIF's immediate and irreparable damage.

## COUNT ELEVEN

### TORTIOUS INTERFERENCE WITH CONTRACT (AUTHORS)
### (Against the Columbia Defendants)

124.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 123 above as if fully set forth herein.

125.     EIF entered into the EIF Releases with Authors, which released and/or assigned certain rights in their scholarly works, for the benefit of EIF.

126.     Upon information and belief, the Columbia Defendants knew about the EIF Releases.

127.     Upon information and belief, the Columbia Defendants knowingly and willfully induced Authors to violate their agreements with EIF by signing Columbia Releases that assigned to Columbia the copyright rights that the Authors previously assigned to EIF.

128.     But for the Columbia Defendants' actions, various Authors would not have breached their agreements with EIF.

129.     The Columbia Defendants' interference with the EIF Releases caused damage to EIF in an amount to be determined at trial.

## COUNT TWELVE

### TORTIOUS INTERFERENCE WITH CONTRACT (PULP)
### (Against the Columbia Defendants)

130.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 129 above as if fully set forth herein.

131.     EIF and Pulp entered into the Pulp Agreement for the development and maintenance of the Iranica Website.

132.     Upon information and belief, the Columbia Defendants knew about the Pulp Agreement.

133.     Upon information and belief, the Columbia Defendants knowingly and willfully induced Pulp to breach the Pulp Agreement by causing Pulp (1) to divulge EIF's confidential information to Columbia and Daniel; and (2) to deny EIF full access to its property relating to the Iranica Website.

134.     But for the Columbia Defendants' actions, Pulp would not have breached the Pulp

Agreement.

135.     The Columbia Defendants' interference with the Pulp Agreement caused damage

to EIF in an amount to be determined at trial.

## COUNT THIRTEEN

### TORTIOUS INTERFERENCE WITH CONTRACT (CLARIVATE)
### (Against the Columbia Defendants)

136.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 135

above as if fully set forth herein.

137.     EIF and Clarivate entered into the Clarivate Contract.

138.     Upon information and belief, the Columbia Defendants knew about the Clarivate

Contract.

139.     Upon information and belief, the Columbia Defendants knowingly and willfully

induced Clarivate to breach the Clarivate Contract by causing Clarivate (1) to change the name of

the party on the Clarivate Contract from EIF to Columbia thereby terminating the Clarivate

Contract with EIF; and (2) to impermissibly suspend EIF's access to the ScholarOne Content in

violation of the Clarivate Contract.

140.     But for the Columbia Defendants' actions, Clarivate would not have breached the

Clarivate Contract.

141.     The Columbia Defendants' interference with the Clarivate Contract caused damage

to EIF in an amount to be determined at trial.

## COUNT FOURTEEN

### CONVERSION
### (Against Columbia)

142.     EIF repeats and realleges each and every allegation in Paragraphs 1 through 141 above as if fully set forth herein.

143.     At all relevant times, EIF was the rightful owner and was entitled to immediate possession of its property, including, but not limited to, the property listed on the EIF Property List, located at the Former EIF Offices, which is under Columbia's dominion and control.

144.     Columbia unlawfully and wrongfully took possession of EIF's property including, but not limited to, the property listed on the EIF Property List, and converted it to its own use.

145.     Columbia has refused, and continues to refuse, EIF access to its records, documents, and assets and has failed to return to EIF all of its property, thereby deliberately exercising unlawful dominion and control over EIF's property.

146.     The fair and reasonable total value of EIF's records, documents, and assets is currently unknown.

147.     Upon information and belief, Columbia's conduct was deliberately calculated to assist Defendants in their unlawful acts of copyright infringement, trademark infringement, trademark dilution, false designation of origin, unfair competition, and tortious interference and to deprive EIF of evidence supporting its claims.

148.     EIF is entitled to recover actual damages from Columbia arising from the deprivation of its property in an amount to be determined at trial together with an award of punitive damages, which are available due to Columbia's wanton, willful, and malicious misconduct.

## COUNT FIFTEEN

### REPLEVIN
### (Against Columbia)

149.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 148 above as if fully set forth herein.

150.    At all relevant times, EIF was the rightful owner and was entitled to immediate possession of its property, including, but not limited to, the property listed on the EIF Property List, located at the Former EIF Offices, which is under Columbia's dominion and control.

151.    On or about April 1, 2019, EIF demanded in writing that Columbia provide it with access to its property including, but not limited to, the property listed on the EIF Property List, so that it could remove its property from the Former EIF Offices.

152.    Columbia has refused, and continues to refuse, EIF access to its records, documents, and assets and has refused to return to EIF all of its property, thereby unlawfully withholding EIF's property from EIF.

153.    EIF is entitled to recover its property from Columbia and any attendant damages.

## COUNT SIXTEEN

### UNAUTHORIZED REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION
### (Against the Columbia Defendants)

154.    EIF repeats and realleges each and every allegation in Paragraphs 1 through 153 above as if fully set forth herein.

155.    The Columbia Defendants committed multiple violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b), when, upon information and belief, they intentionally removed and altered, or caused the removal and alteration of, the Iranica Website CMI from the webpages of the Iranica Website and distributed those webpages, or near identical versions of

those webpages, on the First Counterfeit Website with removed and altered CMI.

156.   Under 17 U.S.C. § 1202(c), the removed and altered Iranica Website CMI constitutes copyright management information.

157.   Upon information and belief, the Columbia Defendants removed and altered the Iranica Website CMI knowing or having reasonable grounds to know that such actions would conceal infringement of EIF's copyright.

158.   Upon information and belief, the Columbia Defendants provided and distributed false CMI on the First Counterfeit Website in order to facilitate or conceal the infringement of EIF's copyrighted works.

159.   By reason of the Columbia Defendants' violations of the Digital Millennium Copyright Act, EIF has sustained and will continue to sustain substantial injuries.

160.   Based on the Columbia Defendants' wrongful conduct, EIF is entitled to injunctive relief, actual damages, and the Columbia Defendants' profits in an amount to be proven at trial, and/or statutory damages in the sum of not less than $2,500 and not more than $25,000 for each webpage on which the Columbia Defendants removed or altered the Iranica Website CMI, as well as an award of EIF's reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, EIF prays for judgment against Defendants as follows:

(1)   Pursuant to 15 U.S.C. § 1116, and the laws of the State of New York, Defendants and each of its agents, employees, attorneys, assigns, and all others in privity or acting in concert with it, be preliminarily and permanently enjoined from:

(a)   continuing to withhold property owned by EIF and that they be ordered to immediately deliver said property to EIF at Defendants' own expense;

(b)   Using or authorizing others to use the Iranica Marks, or any other names, marks, or domain names containing the words ENCYCLOPAEDIA IRANICA, or any confusingly similar names, marks, or domain name similar to EIF's Iranica Marks, in the advertising or sale of any goods or services;

(c)   Using or authorizing others to use in any manner any service mark, trademark, trade name, domain name, trade dress, words, abbreviations, designs, colors, arrangements, collocations, or any combinations thereof, which would imitate, resemble, or suggest EIF's well known Iranica Marks;

(d)   Otherwise infringing or diluting EIF's Iranica Marks;

(e)   Unfairly competing with EIF, diluting the distinctiveness of EIF's well known Iranica Marks, or otherwise injuring EIF's business reputation in any manner;

(f)   Making false or disparaging statements concerning EIF, its officers, employees, or its products; and

(g)   Interfering with EIF's contractual relations or prospective contractual relations.

(2)   Pursuant to 15 U.S.C. § 1118 and the laws of the State of New York, Defendants be directed to deliver up for destruction all advertisements, labels, signs, prints, packages, wrappers, receptacles, and all other materials in its possession or under its control that resemble EIF's Iranica Marks, or any other name or mark containing the Iranica Marks, or any other reproduction, counterfeit, copy, or colorable imitation of EIF's Iranica Marks, and other means of making or duplicating the same.

(3)   Pursuant to 15 U.S.C. § 1117 and the laws of the State of New York, Defendants be directed to account for and pay to EIF actual and/or statutory damages in an amount sufficient

to fairly compensate EIF for the injury it has sustained, punitive damages in an amount sufficient to deter Defendants from engaging in acts of the type complained of herein, and all profits attributable to the infringing sale of goods or services under the names, marks, trade dress, and domain names complained of herein, and further that the amount of the monetary award granted herein be trebled in view of the willful and deliberate nature of Defendants' unlawful conduct.

(4)    Pursuant to 15 U.S.C. § 1117 and the laws of the State of New York, Defendants be ordered to pay treble the amount of actual damages or lost profits sustained by EIF.

(5)    Pursuant to 15 U.S.C. § 1117 and the laws of the State of New York, Defendants be ordered to pay to EIF the costs of this action and EIF's attorneys' fees.

(6)    Defendants be ordered to make an accounting of all income and all profits derived from the sale of products under any mark owned by EIF and be directed to turn over to this Court all records documenting the manufacture, sale, or receipt of things involved in violating EIF's Iranica Marks.

(7)    Pursuant to 17 U.S.C. § 502, Defendants be enjoined from infringing the EIF Copyright Works.

(8)    Pursuant to 17 U.S.C. § 503, Defendants be ordered to destroy and otherwise reasonably dispose of all copies found to have been made or used in violation of EIF's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced.

(9)    Pursuant to 17 U.S.C. § 504, EIF be awarded actual or statutory damages for the harm suffered as a result of Defendants' willful and deliberate infringement of the Copyright Works.

(10)    Pursuant to 17 U.S.C. § 505, EIF be awarded its costs and attorneys' fees in connection with its claims against Defendants.

(11)    Pursuant to 17 U.S.C. § 1203, Defendants be enjoined from violating the Digital Millennium Copyright Act.

(12)    Pursuant to 17 U.S.C. § 1203, EIF be awarded actual or statutory damages for the harm suffered as a result of Defendants' willful and deliberate violation of the infringement of the Digital Millennium Copyright Act.

(13)    Pursuant to 17 U.S.C. § 1203, EIF be awarded its costs and attorneys' fees in connection with its claims against Defendants.

(14)    EIF be awarded money damages, including punitive damages, attorneys' fees, costs and prejudgment interest.

(15)    Columbia be ordered to return EIF's property, including the items on the EIF Property List, to EIF.

(16)    EIF be granted damages and such other, further, different, or additional relief as this Court deems equitable and proper.

———————————

## **<u>DEMAND FOR TRIAL BY JURY</u>**

EIF demands a trial by jury on all issues so triable in accordance with Rule 38 of the Federal

Rules of Civil Procedure.


December 15, 2021                    Respectfully submitted,

                                    By: _s/ Seth L. Levine_____
                                         Seth L. Levine
                                         Scott B. Klugman
                                         Ilana Roberts

                                    **LEVINE LEE LLP**
                                    5 Columbus Circle, 11th Floor
                                    New York, New York 10019
                                    Telephone:  (212) 223-4400
                                    Facsimile:  (212) 223-4425
                                    slevine@levinelee.com
                                    sklugman@levinelee.com
                                    iroberts@levinelee.com

                                    *Attorneys for Plaintiff Encyclopaedia Iranica*
                                    *Foundation, Inc.*